**CONFIDENTIAL**

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE,<br>    Plaintiff<br><br>V.<br><br>PRUDENTIAL INSURANCE COMPANY OF AMERICA & GROUP LONG TERM DISABILITY PLAN NO. 23041<br><br><br>    Defendants | CIVIL ACTION NO. |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO PROCEED UNDER A PSEUDONYM AND TO IMPOUND DOCUMENTS CONTAINING MEDICAL AND IDENTIFYING INFORMATION

This Memorandum is submitted in support of the Plaintiff, Jane Doe's motion: (1) for an order granting leave to proceed with her complaint under a pseudonym; and (2) for an order directing the Clerk to seal and impound the summons and complaint filed with this Court, the Plaintiff's affidavit submitted in support of this motion, and all subsequent documents containing any medical and/or identifying information associated with this proceeding. In support of her Motion, the Plaintiff states that this suit, in which Plaintiff seeks recovery of partial disability benefits owed to her under a long term disability insurance plan, concerns physical medical issues as well as alleged mental health issues that the Defendant, Prudential Insurance Company of America ("Prudential"), has asserted in an effort to justify its termination of Plaintiff's disability benefits. These issues reach into the utmost

1

private areas of the Plaintiff's life. Public disclosure of the Plaintiff's name and the pleadings and proceedings in this action would have a severe, damaging impact on the Plaintiff, both personally and professionally as she attempts to maintain her career, albeit on a part-time basis due to her physical illness. As set forth below, numerous other courts have permitted plaintiffs to use a pseudonym under comparable circumstances.

An affidavit executed by the Plaintiff providing her true name and the facts of this matter has been filed herewith. *See* Exhibit A, attached hereto. No prejudice to Prudential and the Group Long-Term Disability Plan, #38021 ("Plan") can arise from proceeding under a pseudonym.

## FACTS

In January 2007, the Plaintiff filed for long-term disability ("LTD") benefits under her Prudential group disability plan. (Affidavit, ¶ 15). The Plaintiff presented evidence to Prudential, including the opinion of her treating Lyme disease physician, that she was partially disabled as a result of chronic Lyme disease. (Affidavit, ¶ 15). At the time, the Plaintiff was a partner in a Boston law firm where she had practiced since 2000. (Affidavit, ¶¶ 2).

After denying Ms. Doe's claim on two separate occasions – first because Ms. Doe allegedly failed to meet the eligibility requirements for benefits, and second because she had purportedly failed to provide sufficient medical evidence supporting her partial disability, Prudential approved Ms. Doe's claim *without any limitations* in August 2008. (Affidavit, ¶¶ 15-18). However, only two months later, and after receiving no new medical information, Prudential asserted in October 2008 that the Plaintiff was likely disabled due to a mental health condition, and therefore only entitled to two years of benefits under the Plan's

limitation on benefits for individuals suffering from a disability caused by mental illness ("Mental Illness Limitation"). (Affidavit, ¶ 20).

The Plaintiff immediately disputed the characterization of her disability as mental in nature. (Affidavit, ¶ 13). The Plaintiff has no personal history of any mental illness, and prior to her confirmed diagnosis of Lyme disease, she always worked full time. (Affidavit, ¶20). Nevertheless, Prudential maintained its assertion that the Plaintiff suffered from a mental condition. (Affidavit, ¶ 20). Despite her physical limitations, the Plaintiff maintained her practice at a medium-size Boston law firm, and subsequently at her own firm, albeit on a part-time basis due to the disabling symptoms of her physical conditions of Lyme disease, and the subsequent discovery that she was also infected with three other tick-borne co-infections (Babesia microti, Bartonella henselae, and Mycoplasma pneumoneia. (Affidavit, ¶¶ 5,6,12,13,14,44).

In April 2009, Prudential formalized its decision to limit Plaintiff's benefits under the Mental Health Limitation, informing the Plaintiff in a letter dated April 1, 2009, that her claim was being limited effective April 2008 under the Limitation, and therefore, she would only be paid benefits through April 2010. (Affidavit, ¶ 21). However, only six months later, and without any new medical information or change in her condition, Prudential again terminated Plaintiff's benefits, this time on the basis that she was not disabled in any way from full time employment. (Affidavit, ¶ 22). The Plaintiff appealed pursuant to Prudential's internal appeal procedures, her fifth appeal of Prudential's adverse decisions since she initiated her claim in January 2007. (Affidavit, ¶ 22-23). Prudential reversed this decision in September 2010, and paid benefits through April 2010, re-asserting its claim that Ms. Doe was mentally ill and only entitled to benefits for two years. (Affidavit, ¶ 23).

In January 2011, the Plaintiff appealed Prudential's September 2010 decision to limit her benefits under the Mental Illness Limitation. This was the Plaintiff's sixth appeal of Prudential's adverse benefit determinations in four years. (Affidavit, ¶ 24). On June 14, 2011, over six months after the Plaintiff submitted her appeal, and over ninety days after the expiration of its timeframe to review her appeal under ERISA, Prudential upheld its termination of the Plaintiff's benefits under the Mental Illness Limitation. Id. Prudential's decision relied heavily upon a neuropsychological evaluation conducted by Dr. Robert Denney, who claimed that the Plaintiff developed a mental illness (somatoform disorder) as a response to her inability to handle the stress of her job while also being a mother and wife. (Affidavit, ¶ 33).

The Plaintiff suffers from Lyme disease and three related co-infections, which is easy for disability insurers to target unfairly for denial of benefits because of the political controversy regarding its existence in a chronic form and because of reported inaccuracies in various diagnostic testing. (Affidavit, ¶ 37-38). As Ms. Doe stated in her Affidavit:

> 37. After I was diagnosed, I did some research into Lyme disease and discovered that there was quite a controversy over "chronic" or "persistent" Lyme disease. The Center for Disease Control acknowledges that a small percentage of patients with Lyme disease continue to be symptomatic despite treatment. Other well respected organizations, such as the ILADS - which is specifically dedicated to Lyme disease – place a higher percentage on the people who do not fully recover from Lyme disease and believe it is due to a chronic and persistent infection. That notwithstanding, there are many individuals, physicians included, who have made clear in statements on the internet and elsewhere that they believed that chronic Lyme disease is not real. I also became aware of a political controversy regarding the existence of chronic Lyme disease.
>
> 38. In addition, I encountered information on the internet indicating that because research into my conditions (both Lyme and its numerous co-infections) was still in its early phases and these conditions were not well-understood, some physicians believed that chronic Lyme disease was

> psychologically-based, despite the conclusions of many governmental and medical researchers to the contrary. I have experienced this discrimination during the pendency of my claim with Prudential. Prudential has denied my claim and alleged I have a mental illness based exclusively on file reviews performed by doctors who have no expertise in the diagnosis or treatment of Lyme disease.

(Affidavit, ¶ 37-38).

The Defendant's decision to limit the Plaintiff's benefits under the Mental Illness Limitation and to deem her partial disability as "due to" mental illness is without merit. Ms. Doe has no personal history of any mental illness, and prior to her confirmed diagnosis with Lyme disease, she worked (and excelled) on a full time basis. (Affidavit, ¶20). However, the Defendant's decision to characterize the Plaintiff as mentally ill throughout most of the internal appeals process – a decision its own physician refuted at one point during the internal appeals process, but which was nonetheless subsequently upheld by its claims department – has forced the Plaintiff, a practicing attorney in the greater Boston region, to file the current Motion. The Defendant should not be able to destroy the Plaintiff's practice and her reputation as a result of its own unsupported decision to classify her as mentally ill.

## ARGUMENT

### I. COURTS HAVE DISCRETION TO PERMIT PLAINTIFFS TO PROCEED UNDER A PSEUDONYM WHEN THE PLAINTIFF DEMONSTRATES A NEED FOR CONFIDENTIALITY THAT DOES NOT INTERFERE WITH PUBLIC INTEREST IN DISCLOSURE.

The First Circuit has yet to address the appropriate standard for proceeding under a pseudonym. Rule 10(a) of the Federal Rules of Civil Procedure requires individuals to disclose his or her identity to commence a lawsuit. However, it is undisputed that Courts have discretion to permit a plaintiff to proceed under a pseudonym. *See, e.g., Doe v. Bell Atlantic Business Systems, Inc.*, 162 F.R.D. 418 (D.Mass. 1995), citing, *Doe v. University of*

*Rhode Island*, 1993 WL 667341 (D.R.I. 1993), *citing Doe v. Frank*, 951 F.2d 320 (11th Cir.1992), *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir.1981).

Several courts within the First Circuit have exercised their discretion to permit a plaintiff to use a pseudonym. *See e.g., Doe v. Travelers*, 167 F.3d 53 (1st Cir. 1999); *Doe v. Raytheon*, 2002 WL 1608279 (D.Mass. July 19, 2002); *Doe v. University of Rhode Island*, 1993 WL 667341 (D.R.I. 1993); *Doe v. Blue Cross and Blue Shield of Rhode Island*, 794 F.Supp. 72, 73 (D.R.I.1992) (court allowed plaintiff to proceed under a pseudonym because his suit related to his status as a transsexual, noting that "I will not strip plaintiff of the cloak of privacy which shields him from the stigmatization he might otherwise endure.")

Judge Gorton, in *Doe v. Bell Atlantic Business Systems*, outlined factors for courts to consider in exercising their discretion:

1)  there is a presumption in favor of disclosure;

2)  a party may rebut the presumption by showing that a need for confidentiality exists;

3)  the court must balance the need for confidentiality against the public interest in disclosure.

*Doe v. Bell Atlantic Business Systems*, 162 F.R.D. at 420.

Courts have allowed the use of fictitious names for parties who have shown that disclosure of their identities would subject them to harm or social stigmatization, or in situations where the disclosure involves matters of a sensitive or highly personal nature. *E.g.,* James Wm. Moore, et al., Moore's Federal Practice 10.02 (3d ed. 2004). In *Doe v. Bell Atlantic Business Systems*, for example, the court explained:

> Courts have allowed plaintiffs to proceed anonymously in cases involving social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of plaintiff's identity.

6

> Economic harm or mere embarrassment are not sufficient to override the strong public interest in disclosure. Cases in which parties are allowed to proceed anonymously because of privacy interests often involve "abortion, mental illness, personal safety, homosexuality, transsexuality and illegitimate or abandoned children in welfare cases."

*Doe v. Bell Atlantic Business Systems,* 162 F.R.D. at 420, citing *Doe v. Blue Cross and Blue Shield of Rhode Island,* 794 F.Supp. 72, 74 (D.R.I.1992), *citing Doe v. Rostker,* 89 F.R.D. 158, 161 (N.D.Col.1981).

## II. THIS IS AN EXCEPTIONAL CASE IN WHICH A COMPELLING NEED EXISTS TO PROTECT THE PLAINTIFF'S IMPORTANT PRIVACY INTERESTS.

Ms. Doe has a substantial privacy right that far outweighs the public's interest in disclosure. The damage to Ms. Doe should this Motion be denied is more than merely economic harm and/or embarrassment. Ms. Doe risks the loss of her career as an attorney in Boston area, where she has performed with distinction for over fifteen years, the loss of her livelihood, damage to her personal and professional reputation, the public disclosure of her medical and mental health records for the last six years and the risk of social and professional stigmatization. *See Doe v. Bell Atlantic Business Systems Servs., Inc., supra,* 162 F.R.D. at 420 (noting that the "most compelling situations" for use of fictitious names include matters where disclosure will lead to "stigmatization.") *See also,* Affidavit, ¶¶ 39-45. Ms. Doe's decision to file this lawsuit in light of this risk has been a wrenching one, and this Motion is vital to protect her from the kind of harm courts have respected as overcoming the presumption of disclosure. (Affidavit, ¶ 35, 44).

The potential damage to Ms. Doe should this Motion be denied is clear. Despite her illness, Ms. Doe continues to maintain a solo legal practice on a part-time basis. (Affidavit, ¶ 39-45). Like many solo practitioners, Ms. Doe's livelihood depends upon her ability to bring

7

in new clients through referrals and retain current clients. (Affidavit, ¶ 41-42). Should the reality of her partial disability and Prudential's claims that she is mentally ill be made public, Ms. Doe stands the very real likelihood of losing work as current and potential clients will be less likely to retain Ms. Doe's services if they believe that she is physically, or even worse, mentally, unable to advocate in their best interests. (Affidavit, ¶41-42). This damage is likely, regardless of whether or not this Court ultimately finds that Prudential's classification of Ms. Doe as disabled due to mental illness is unsupported. Unfortunately, our society continues to be driven by outdated myths and stereotypes regarding mental illness. For example, studies have shown that society tends to characterize mental illness as a sign of personal weakness, or to believe that the mentally ill are less intelligent than others. *See Mental Health, a Report of the Surgeon General*, 1999, http://www.surgeongeneral.gov/library/mentalhealth/chapter1/sec1.html#roots_stigma; http://www.who.int/mediacentre/factsheets/fs218/en/print.html; Bagenstos, Samuel R. *Subordination, Stigma and "Disability"*, Virginia Law Review, April 2000, pps. 436- 445. The mere insinuation that Ms. Doe is mentally ill, whether true or not, will damage her practice and her professional reputation.

Moreover, Ms. Doe's primary area of practice is criminal defense. (Affidavit, ¶ 6). Her clients, colleagues, potential referral sources and opposing counsel as well as business competitors regularly follow cases in this area and therefore would likely become aware of this case and Ms. Doe's identity as the Plaintiff if she were not permitted to proceed under a pseudonym, particularly in light of Ms. Doe's reputation in this area. (Affidavit, ¶ 41). For example, clients, colleagues and opposing counsel would be likely to see any discussion of this case in *Massachusetts Lawyer's Weekly* or any decision that were to be reported or appear

in the results of a Lexis or Westlaw search. Indeed, if another attorney were merely to insert Ms. Doe's name in a Pacer search looking for a case in which she has entered an appearance, this case would appear. Similarly, even a Google search using Ms. Doe's name in an effort to locate her could result in a "hit" identifying this case if Ms. Doe's real name is used.

Ms. Doe has worked while partially disabled since her initial Lyme disease diagnosis in 2005. To the extent possible, she has worked through days of significant illness because maintaining her career, and not succumbing to her illness, has been paramount in her life. (Affidavit, ¶ 45). Prudential unfairly terminated Ms. Doe's claim for disability benefits. She has already suffered that financial loss, and been forced to incur attorneys' fees and expenses appealing Prudential's numerous denials or terminations. To compound this loss with the potential loss of her reputation and career when the public and Ms. Doe's clients and colleagues are made aware of Prudential's belief that she is mentally ill and while she is partially disabled, is unfair and unnecessary. Directly on point is *Doe v. Provident*, 176 F.R.D. 464, 468 (E.D.Pa. 1997). In allowing the plaintiff to proceed under a pseudonym in an ERISA disability benefits case, the court explained: "[i]n this case, there is a great risk that plaintiff will be stigmatized in his professional life. Plaintiff, as an employee benefits and insurance broker, dealt with attorneys on a regular basis. There is a strong possibility that some of these attorneys will follow this case in legal publications with the result being that plaintiff's professional reputation will be permanently damaged."

Second, Ms. Doe risks significant social stigmatization should this case become public. (Affidavit, ¶ 40, 43). Specifically, Ms. Doe has conscientiously worked to keep the full extent of her disabling symptoms and Prudential's claim that she is mentally ill confidential; limiting knowledge of its existence to her family, a few close friends, medical

9

care providers and the partners at her prior law firm. (Affidavit, ¶¶ 12,36,39). Prudential compounded Ms. Doe's concerns regarding differential treatment when it called her illness mental in nature. Should Prudential's belief that Ms. Doe is mentally ill become public knowledge – even if this belief is proven to be wrong – Ms. Doe risks significant stigmatization in both her community and her career. Despite the strides our society has made in the diagnosis and treatment of mental illness, individuals suffering from mental illness are nevertheless treated in a substandard manner. As the court stated in *Doe v. Provident*:

> To start, the public has an interest in preventing the stigmatization of litigants with mental illnesses. Further, plaintiff's identity should be protected in order to avoid deterring people with mental illnesses from suing to vindicate their rights. . . . The public has a strong interest in protecting plaintiff's identity. A ruling by this Court, denying plaintiff the use of a pseudonym, may deter other people who are suffering from mental illnesses from suing in order to vindicate their rights, merely because they fear that they will be stigmatized in their community if they are forced to bring suit under their true identity. Indeed, *unscrupulous insurance companies may be encouraged to deny valid claims with the expectation that these individuals will not pursue their rights in court.*

*Doe v. Provident*, 176 F.R.D. at 468. (Emphasis added).

It is also important to note that this case is fundamentally different than *MacInnis v. Cigna Group Ins. Co. of America*, 379 F.Supp.2d 89 (D.Mass. 2005), where Judge Gorton denied Ms. MacInnis' request to proceed under a pseudonym. Unlike Ms. Doe, Ms. MacInnis did not cite any fundamental damage to her that might occur should her motion not be granted. Ms. MacInnis' failure to provide the court with a justification to permit her to proceed anonymously led to the denial of her motion. *See* Exhibit B for the Plaintiff's Motion in *MacInnis*.

Third, because this is an ERISA benefits denial case, all of the documents reviewed by

Prudential during the internal appeals process will be filed with the Court, meaning that the public would have access to confidential medical information regarding Ms. Doe. Specifically, the ERISA judicial record includes Ms. Doe's medical records dating back to 2005, neuropsychological testing, and Prudential's medical and neuropsychological reviews. These records contain extensive discussion of Ms. Doe's medical history – much of which she disputes as being inaccurate. (Affidavit, ¶¶ 17, 32). Accordingly, if this case is made public, all this sensitive, personal – and often incorrect - medical information will be available to any individual able to access Pacer or the Federal District Courthouse. The fact that so much medical information, much of which is unrelated to the question of Ms. Doe's disability, will be made public, militates in favor of a finding that this case be sealed, and Ms. Doe be permitted to proceed under a pseudonym.

Finally, there is a substantial public interest in ensuring that cases like the Plaintiff's are adjudicated and the rights of individuals suffering from disabilities – mental disabilities (whether real or alleged), in particular, are represented fairly and without the risk of stigmatization. However, this goal cannot be achieved if litigants suffering from mental illness – or who have been labeled by the Defendant to be suffering from mental illness, however wrong, are chilled from ever approaching the courthouse steps for fear of repercussions that would ensue if their condition was made public. *See* Affidavit, ¶¶ 35, 44. As Ms. Doe stated in her Affidavit:

> If my cognitive abilities and my mental health are doubted, I will be unable to maintain my practice, and all that I have worked for will have been lost. For that reason, when Prudential ultimately upheld its decision to terminate my benefits in June 2011, I seriously considered abandoning my claim in order to guarantee that my privacy and reputation would be fully protected.

Affidavit, ¶¶ 44. *See Doe v. Provident*, 176 F.R.D. at 468-469. Although any litigant runs the

risk of public embarrassment by bringing their case and revealing sensitive facts in a public courtroom, the situation here is vastly different. First, Ms. Doe's medical condition is directly tied to the subject matter of the litigation – her disability and the disability benefits she is entitled to. In this case, Ms. Doe's situation is analogous to a woman seeking an abortion or to a homosexual fired from his job because of his sexual orientation. *See e.g., Roe v. Wade, supra; Doe v. Commonwealth's Attorney for City of Richmond*, 403 F.Supp. 1199 (E.D.Va. 1975), *aff'd* 425 U.S. 901 (1976) (permitting a homosexual to proceed under a pseudonym in challenging state sodomy law). Like those litigants, Ms. Doe is faced with circumstances that society may not yet understand or accept and her condition is directly tied to the issues before the Court.

Second, because of the nature of her profession, Ms. Doe's clients colleagues and acquaintances (and business competitors) are much more likely to become aware of this litigation than in the case of an employee seeking benefits who is not an attorney, much less one who is as visible as Ms. Doe. Affidavit, ¶¶ 26, 41-45. *Doe v. Provident*, 176 F.R.D. 464, 468 (E.D.Pa. 1997).

### III.   MS. DOE'S NEED FOR CONFIDENTIALITY FAR OUTWEIGHS THE PUBLIC'S INTEREST IN DISCLOSURE.

There is significant merit to the First Amendment right of public access to judicial proceedings. However, allowing Ms. Doe to proceed under a pseudonym will not interfere with the public's right to follow this proceeding. A complaint, answer, and decision can be issued in this case, while maintaining the confidentiality of the Plaintiff's identity. Motions can also be made public if identifying information is removed.

The issues in this case do not turn on the identity of the Plaintiff. The Plaintiff is not a

public figure, which would strengthen the public's interest in knowing her identity. There are no illegal or ulterior motives in keeping her identity confidential; Ms. Doe merely seeks to protect her livelihood, reputation and medical records. Moreover, there is no evidence that permitting the Plaintiff to proceed anonymously would in any way prejudice or create an undue hardship since the parties are well aware of the Plaintiff's identity. Accordingly, the Plaintiff's motion to proceed anonymously should be granted, as it has in numerous other ERISA cases. *See e.g., Doe v. Travelers*, 167 F.3d 53 (1st Cir. 1999); *Radford Trust v. First Unum Life Insurance Company*, 321 F.Supp.2d 226 (D.Mass. 2004); *Doe v. Raytheon*, 2002 WL 1608279 (D.Mass. July 19, 2002); *Prudential Insurance Co. of America v. Doe*, 76 F.3d 206 (8th Cir. 1996); *Doe v. Provident*, 1997 WL 214796 (E.D.Pa 1997); *Doe v. Provident*, 936 F.Supp.302 (E.D.Pa. 1996); *Doe v. Kohn, Nast & Graf, P.C.*, 862 F.Supp. 1310 (E.D.Pa. 1994); *Doe v. General American Life Insurance Co.*, 815 F. Supp.1281 (E.D.Mo. 1993); D*oe v. Guardian Life Ins. Co. of America*, 145 F.R.D. 466 (N.D.Ill. 1992).

### IV. THERE IS NO LEGITIMATE REASON FOR THE DEFENDANT TO OPPOSE THIS MOTION AND IT WILL NOT SUFFER ANY HARM IF THIS MOTION IS ALLOWED.

There will be no prejudice to Prudential should this Motion be granted. Specifically, neither Prudential's ability to defend itself, or to prepare its case, will be affected by the granting of this Motion. *See Doe v. Provident*, 176 F.R.D. 464 at 469. Moreover, the cost of defending this action will not be increased should this Motion be granted. Further, permitting the Plaintiff to proceed under a pseudonym will not impair the Defendant's ability to conduct discovery or access information relevant to its defense – in fact, because this is an ERISA case, the Defendant already has in its possession all of the information necessary for it to litigate this matter. *Id. See also, Doe v. Smith*, 105 F.Supp.2d 40, 45 (E.D.N.Y. 1999)

(finding that there was no prejudice to defendant where it retained right to depose any and all witnesses, obtain any and all documents, and had not limited defendant's rights or public access to a trial).

Furthermore, Prudential has no legitimate claim that the Plaintiff's pursuit of this action under a pseudonym will further damage its reputation. *See e.g., E.W. v. New York Blood Center*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003) (where the court rejected the Defendant's claim of further damage to their reputation should the plaintiff be permitted to proceed anonymously). Unlike a private party, with interests similar to Ms. Doe's, Prudential is an international business, which is regularly sued for disability insurance benefits. *See e.g., Buffonge v. Prudential Ins. Co. Of America,* 426 F.3d 20 (1st Cir. 2005); *Beattie v. Prudential Ins. Co. of America*, 2011 WL 2413458 (D. Mass., June 8, 2011); *Kaufmann v. Prudential Ins. Co. of America*, 667 F.Supp.2d 205 (D.Mass 2009); *Weed v. Prudential Ins. Co. of America. 2009 WL 2835207* (D. Mass., Aug. 28, 2009); *Sansby v. Prudential Ins. Co. of America*, 2009 WL 799468 (D. Mass., March 25, 2009); *Dickerson v. Prudential Life Ins. Co. of America*, 574 F.Supp.2d 239 (D.Mass. 2008). *Cf. also, E.W. v. New York Blood Center*, 213 F.R.D. at 112 ("Moreover, as the publication of magazine articles about NYBC attests, there has already been substantial press relating to the allegedly problematic blood screening procedures at NYBC. As such, any additional prejudice to the defendant's reputation or ability to operate merely by the pursuit of the action under a pseudonym appears minimal.").

Finally, Ms. Doe's concerns regarding her privacy are only underscored by Prudential's repeated disregard for her privacy throughout the pendency of her claim. On several occasions, Prudential disclosed, without Ms. Doe's permission and in stark contrast to her wishes, her medical information to third parties, information which still remains in those

parties' possession. (Affidavit ¶¶ 26-30). As Ms. Doe stated in her Affidavit:

31. At this point, I am horrified at the widespread dissemination of my private medical records, neuropsychological evaluation reports, and raw data without my authorization. I do not even know the full extent to which Prudential and its agents have sent out this highly private information. Prudential violated my privacy even after my attorney put them on written notice that my authorization was revoked, and even after a breach of my privacy was prominently highlighted in one of my earlier written appeals. I have absolutely no confidence that my very private medical information is safe and secure in Prudential's hands, or its agents' hands.

32. Moreover, the medical file reviewers hired by Prudential – none of which have any expertise in neurological Lyme disease - have issued reports that are replete with outright false information about my medical history (i.e., Dr. Brusch claiming my Lyme disease titers were not positive). We have notified Prudential in writing of these inaccuracies and they have done nothing to correct them. It would be bad enough if my very private medical information were made public, but Prudential has made so many misrepresentation about my medical history that the information in the public domain would not even be accurate.

(Affidavit, ¶¶ 30-32).

Ms. Doe has worked all her life to be an attorney, and achieved her goal with resounding success. Permitting this matter to go forth without protecting Ms. Doe's privacy will only result it stripping her of what is left of that career, which she has fought so hard to maintain. (Affidavit, ¶ 45).

## CONCLUSION

For the reasons stated above, this Court should grant the Plaintiff leave to proceed with her complaint under a pseudonym and order the Clerk to impound and seal the affidavit accompanying this motion, and all pleadings, papers or orders, filed or issued in connection with these proceedings that contain information identifying the plaintiff or from which her identity can be determined.

Date: September 23, 2011      Respectfully submitted for the Plaintiff,

By: _____
Mala M. Rafik
BBO No. 638075
ROSENFELD RAFIK &
     SULLIVAN, P.C.
184 High Street, Suite 503
Boston, MA 02108
Tel. 617-723-7470
Fax. 617-227-2843
Email. mmr@rosenfeld.com